IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

HAZEL A. SMITH, )
 )
    Plaintiff, )
 )
 ) CIV-13-144-R
v. )
 )
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
   Security Administration, )
 )
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on August 25, 2010, alleging that she became disabled on August 19, 2008. Her earnings record reflects that Plaintiff had very

little previous earnings and none since 2002. (TR 139-140, 142). Plaintiff alleged she was unable to work because of hepatitis C viral infection, "heart" problems, poor memory/dementia, liver problems, shortness of breath and emphysema, anxiety/depression, and arthritis in her neck. (TR 149). In a Function Report, Plaintiff stated,

> I cannot remember. I frequently cannot remember what I am talking about. I cannot walk around the block without severe pain. I am very weak. I have anxiety attacks. I am short of breath due to heart [and] COPD.

(TR 158).

She described previous work until August 2005 as a family caretaker and certified nursing assistant ("CNA") in a nursing home. (TR 150). Plaintiff stated she completed three years of college and that she had been an "RN [and] excelled at it." (TR 150, 159).

In an administrative hearing conducted on December 13, 2011, before Administrative Law Judge Shepherd ("ALJ"), Plaintiff testified she had trouble remembering what she was reading, she was mostly a homemaker between 1997 and 2008, and she had not worked since 2008. Plaintiff stated that walking or bending over caused an increase in her back pain, and she did not have good balance and fell almost every day. She occasionally had shortness of breath and used a nebulizer. Her doctors had advised her to quit smoking. Plaintiff testified she had not had a driver's license for 30 years. A vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision on February 21, 2012, in which the ALJ found that Plaintiff had not engaged in substantial gainful activity since she filed her application on August 25,

2

2010. Following the agency's well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to "[h]epatitis C, chronic obstructive pulmonary disease, hypertension, anxiety, affective mood disorders, obesity, osteoarthritis, degenerative changes severe at the L5-S1 level, minimal spondylylosis of the thoracic spine, moderate degenerative changes in the cervical spine, a history of alcohol and drug use, [and] artherosclerosis." (TR 17).

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. At the fourth step, the ALJ found that despite her impairments Plaintiff had the residual functional capacity ("RFC") to perform some work at the light exertional level. Specifically, the ALJ found that Plaintiff could

> lift and carry 20 pounds occasionally and 10 pounds frequently; she can sit for about six hours during an eight-hour workday; stand and walk for six hours during an eight-hour workday; she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to dust, fumes, gases, orders [sic], and poor ventilation; she can understand, remember, and carry out simple, routine, and repetitive tasks; and she can respond appropriately to supervisors, coworkers, and usual work situations but have no contact with the general public.

(TR 19). In reaching this finding, the ALJ reviewed the medical evidence and expressed eighteen reasons for finding Plaintiff's subjective statements not entirely credible. (TR 19-24). The ALJ found that this RFC for work precluded the performance of Plaintiff's previous work as a caretaker and CNA.

Reaching step five, the ALJ determined that Plaintiff was not disabled within the

3

meaning of the Social Security Act because there were jobs available in the economy which she could perform. Relying on the VE's testimony at the hearing, the ALJ found that Plaintiff could perform the requirements of the representative occupations of dining room attendant, pre-assembler, and mailroom clerk.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Consideration of Third Party Statements

Plaintiff contends that the ALJ committed reversible error by failing to expressly

4

consider the hearing testimony of Plaintiff's son, Eric, and the written third-party function report completed by Plaintiff's friend, Mr. Norvin Robson. The Commissioner responds that no error occurred, and even if error occurred it was harmless.

At the hearing, Plaintiff's son, Eric, testified that Plaintiff had lived with him for a little over two years and that Plaintiff had fallen two days before when a chair on which she had placed her knee broke. Eric testified that four days prior to that during a rain shower Plaintiff had fallen in mud outside of the house. Eric estimated that Plaintiff fell down "at least every other day." (TR 58). Eric testified that he accompanied Plaintiff to her doctor's appointments to help her remember the doctor's instructions, that he helped Plaintiff get out of a chair and drove her places, and that he helped her with "pretty much everything . . . right now." (TR 59).

The record contains a third party function report signed by Mr. Robson and dated September 24, 2010. (TR 168-175). Mr. Robson stated in this report that he had spent time with Plaintiff during the "[l]ast ten years" and that her ability to work was limited by "can't remember, dementia due to high amonia [sic] levels, bad liver, [indecipherable], memory." (TR 168). Most of the report is blank, but Mr. Robson stated that Plaintiff "feeds the dog" and "just kinda drifts around" during the daytime. (TR 169, 171). He indicated that Plaintiff had difficulty with nearly all exertional and cognitive activities, but he provided no explanation for this assessment. (TR 173).

Plaintiff relies on Social Security Ruling ("SSR) 06-3p in arguing that the ALJ erred by not expressly considering the testimony of Plaintiff's son, Eric, and the third-party

5

function report completed by Mr. Robson.

The agency's regulations distinguish between opinions from "acceptable medical sources," who are defined as licensed physicians, psychologists, podiatrists, and qualified speech-language pathologists, and other health care providers who are not "acceptable medical sources." 20 C.F.R. §§ 416.913(a), (d)(1). The regulations further provide that adjudicators may consider information from other "non-medical sources." For instance, adjudicators "may . . . use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work. . . . Other sources include . . . (4) [o]ther non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. § 416.913(d)(4).

SSR 06-3p "clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources.'" SSR 06-3p, 2006 WL 2329939, at *4. The agency states in the ruling that the clarification is necessary because

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. at *3.

To effectively further this policy, the agency advised that "[a]djudicators generally

should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6.

The ruling briefly states that

> '[n]on-medical sources' who have had contact with the individual in their professional capacity, such as teachers, school counselors, and social welfare agency personnel who are not health care providers, are also valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time. Consistent with [the regulations], we also consider evidence provided by other 'non-medical sources' such as spouses, other relatives, friends, employers, and neighbors.

Id. at *3. The ruling specifically advises that "[s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. at * 6.

Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995). Plaintiff has not shown that either Eric or Mr. Robson provided significantly probative evidence or that their testimony and

7

statements were uncontroverted.

Plaintiff testified that she had trouble remembering what she was reading and that she was "real clumsy" and tended to "trip over everything." (TR 42, 48). She estimated she was falling down "almost every day." (TR 49). Plaintiff did not, however, indicate that her memory problems or lack of balance were related to a medically-determinable impairment. Eric testified that he had observed Plaintiff falling because (1) a chair on which she had placed her knee broke and (2) she slipped in mud, and both of these instances of falling could certainly occur to non-disabled individuals. Eric estimated that Plaintiff fell every other day. However, Eric did not testify that any medically-determinable impairment had caused Plaintiff to fall. He vaguely stated that he had to help her "getting out of a chair, standing up" and with "pretty much everything." (TR 59). Eric stated that he took Plaintiff to her doctor's appointments to help her remember the doctor's instructions. Again, however, he did not relate these statements to any medically-determinable impairment.

Eric's testimony was not consistent with medical evidence in the record. Plaintiff complained on one occasion to a medical examiner in February 2011 that she "fell x 2 yesterday" but the examiner, Dr. Pratts, noted "No Diagnoses Found" other than back pain, depressive disorder, and hypertension. (TR 385-387). As the ALJ pointed out in the decision, Plaintiff tested positive for methamphetamine during a brief hospital ER visit when she complained of having fallen down, and she left the hospital against medical advice. (TR 216, 226). As the ALJ also pointed out in the decision, a consultative psychological examiner, Dr. Danaher, found that in clinical testing Plaintiff exhibited only a mild cognitive

deficit and that despite this deficit Plaintiff could "understand, remember and carry out simple and complex instructions in a work related environment." (TR 20, 350-351). Eric did not provide significantly probative or uncontroverted evidence that the ALJ was required to expressly consider.

Mr. Robson, whom Plaintiff described as her "significant other" (TR 148), provided brief, vague answers on a third-party function report. For instance, Mr. Robson stated "not a good idea" in response to a question as to whether Plaintiff drove a vehicle. (TR 171). In response to a question as to how Plaintiff spent her days, he stated that she "feeds the dog" and "just kinda drifts around." (TR 169, 171). These nonspecific statements do not provide significantly probative evidence that the ALJ was required to expressly consider.

Moreover, the ALJ reviewed the medical evidence in the record and, based on that evidence, found that Plaintiff's testimony and subjective statements were not fully credible because, *inter alia*, she "had a single episode of syncope and seizure activity which did not recur," she exhibited "no loss of joint range of motion" in clinical examinations, and she exhibited "normal gait without the use of any assistive device" during a consultative examination. (TR 23). The ALJ provided eighteen specific reasons for discounting the credibility of Plaintiff's testimony and statements, and any error in the ALJ's failure to expressly address the non-medical, non-professional testimony of Plaintiff's son, Eric, and Mr. Robson was "harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" Best-Willie v. Colvin, 514 Fed.Appx. 728, 736 (10th Cir. 2013)(unpublished op.)(quoting Buckner v.

9

Astrue, 646 F.3d 549, 550 (8th Cir. 2011))(brackets in original). See Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012)(holding ALJ's failure to discuss lay testimony and statements in the record was harmless as reasons given for discounting claimant's testimony "appl[ied] with equal force to the lay testimony").

The VE testified that an individual with Plaintiff's RFC for work could perform three representative jobs in the economy. The ALJ relied on this testimony in determining that Plaintiff was not disabled, and the ALJ's step five decision was based on substantial evidence in the record. Accordingly, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      January 7th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this   18th   day of   December  , 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE